FILED
2016 Aug-23 PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **ROGER W. WATTS, and ROGER W. WATTS, JR.,** | ) |
| | ) |
| | ) |
| **Plaintiffs,** | ) |
| | )   **Case No.: 4:16-CV-740-VEH** |
| **v.** | ) |
| | ) |
| **REGIONS FINANCIAL CORPORATION ET AL.,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

---

## MEMORANDUM OPINION

The Sisyphean task of clearing the court's high-Wattage docket continues. Roger W. Watts [hereinafter, "Senior"] and Roger W. Watts, Jr [hereinafter, "Junior"] [hereinafter and collectively, "the Watts"] have sued Regions Financial Corporation, Regions Bank[1] [collectively, "Regions"], Etowah County Commission, Sheriff Todd Entrekin, and RREF RB SBL-AL, LLC [hereinafter, "RREF"]. All defendants have moved to dismiss the Watts' complaint, and the motions will be **GRANTED IN PART**. All federal claims will be **DISMISSED**. Any state claims raised by the Watts and not otherwise dismissed herein will be **DISMISSED WITHOUT PREJUDICE**.

---

[1] Incorrectly denominated "Regions Banks" in the complaint.

### STATEMENT OF FACTS

In 2002, Regions Bank loaned $49,745.92 to Senior and his company, Enrestoration, Inc. (Doc. 11-1 at 1). The loan was secured by two parcels of real property. *Id.* On August 13, 2013, Regions Bank sued Senior and Enrestoration to recover the amount owed. *Id.* The state court granted summary judgment in Regions' favor on January 16, 2014. (Doc. 10-4 at 10). In the meantime, Regions (or so the Watts believed) attempted to foreclose on the parcels of real property.

On December 19, 2013, Senior and Enrestoration moved in state court for a temporary restraint of Regions' (purported) foreclosure on the mortgaged property. (*See generally* doc. 11-2). The state court judge granted the motion on December 20, 2013 and temporarily restrained Regions' right to foreclose; the matter was then set for a hearing on a preliminary injunction, to be held on December 30, 2013. (*See* doc.11-3).  But unbeknownst to the state judge (and, it seems, Senior), Regions had assigned the mortgage to RREF RB Acquisitions, LLC, a Delaware limited liability company, around July 17, 2012, doc. 10-3 at 2–5, which then assigned the mortgage to RREF, an Alabama limited liability company, in June 2013, *id.* at 6–10—meaning RREF was the true foreclosing party. So RREF hummed along on its foreclosure, unburdened by the restraining order, which, by its terms, applied only to Regions. The hearing was held on December 31, 2013, but RREF had completed the foreclosure on

December 20, 2013, so the hearing was not fruitful for the Watts. (*See* doc. 11-4).

After securing foreclosure, RREF sought possession of the properties and filed unlawful detainer actions against a number of individuals whose names are irrelevant, as well as "[a]ll [o]ther [o]ccupants" of the subject properties. (Doc. 10-2 at 2). Junior was among these "[o]ther [o]ccupants," so he defended the action. (*Id.*). And he lost when the state district court entered an unlawful detainer order. (*Id.* at 2). So Junior appealed the order to the Etowah County Circuit Court, where, on January 4, 2016, he lost again. (*Id.* at 7). The state circuit judge issued a writ of possession in that judgment. (*Id.*). The Etowah County Sheriff's Office has issued notice to the Watts to vacate the property.

Although some may say that Junior and Senior have a blithe disregard for the line between pugnacity and contumacy, *see, e.g.*, doc. 10-1 at 4, the Watts do not take bad news lying down, so they filed a new lawsuit in state court on March 28, 2016. (Doc. 11-7). Therein, they requested a temporary restraining order of the execution of the writs of possession. The complaint in that case is, for all intents and purposes, the same as the one in this case. (*Compare* doc. 1, *with* doc. 11-7).

## THE CURRENT CLAIMS, SO FAR AS THE COURT CAN TELL

This action was filed on May 6, 2016. As the defendants have pointed out, the complaint "is not a model of the careful drafter's art," *United States v. Hayes*, 555

U.S. 415, 429 (2009), so—aside from the fact that the Watts are unhappy about the foreclosure—it is difficult to tell exactly what their beef is. This failing could warrant dismissal with prejudice on its own, if the court were willing to give the Watts another shot (or two) at drafting the complaint. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015) (quoting *Anderson v. Dist. Bd. of Tr. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (*Sua sponte* dismissal is warranted where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief). Alas, because the defendants have moved for dismissal, the court will attempt to figure out the federal claims asserted.

The Watts invoke 42 U.S.C. § 1983, which "is not itself a source of substantive rights but a method for vindicating federal rights elsewhere conferred." *Backer v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). A similar principal applies to their request for declaratory relief, which is merely a procedural mechanism, not a substantive right. *See Aetna Life Ins. Co. Of Hartford v. Haworth*, 300 U.S. 227, 240 (1937). Senior and Junior seek remedies in the form of damages, injunctive relief, and declaratory relief. They additionally request that the court "enjoin case with case in the district court for Etowah County, Alabama," doc. 9 at 3 which the court takes to be a request that this action be consolidated with the pending and identical Alabama

action. The Watts, as plaintiffs, may always <u>voluntarily</u> dismiss their state court case, *see* ALA. R. CIV. P. 41(a)(1), but this court cannot order the Alabama court to withhold the exercise of its jurisdiction in this case. This case and the state case will not be "enjoin[ed]."

For substantive violations, the Watts appear to allege that they were denied the process due under the Fourteenth Amendment in either the foreclosure itself or the judgment issuing the writ of possession [hereinafter, "JWP"]. They also appear to claim that the foreclosure and the JWP violated the Fair Debt Collection Practices Act, codified at 15 U.S.C. §§ 1692–92p [hereinafter, "FDCPA"]. Additionally, they appear to assert that, in some way, the JWP and the foreclosure violated the Fourteenth Amendment's equal protection clause. Further, they argue that their eviction from the property by the sheriff's office would violate the Third Amendment,[2] or at least the court takes this to be the import of their statement that the sheriff has threatened a "hostile military takeover" of the property. (Doc. 1 at 15, ¶ 17).

The court assumes that each claim is asserted against each defendant, so, for

---

[2] "No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law." U.S. CONST. amend III.

ease of reference, here are the claims[3] in issue:

## Count I
42 U.S.C. § 1983 to enforce the Fourteenth Amendment's Due Process Clause by Monetary and Injunctive Relief

## Count II
42 U.S.C. § 1983 to enforce the Fourteenth Amendment's Equal Protection Clause by Monetary and Injunctive Relief

## Count III
42 U.S.C. § 1983 to enforce the Third Amendment by Injunctive Relief

## Count IV
15 U.S.C. § 1692k to enforce the provisions of the FDCPA by Monetary and Injunctive Relief

## Count V
42 U.S.C. § 1983 conspiracy to violate the Watts' Civil Rights

The Watts may also assert divers claims under Alabama law.[4] The court need

not reach these, whatever they may be, because any remaining state claims will be

dismissed without prejudice pursuant to 28 U.S.C. § 1367(c) after the resolution of

---

[3] The complaint features a section titled "Corruption of Authority," doc. 1 at 17, the content of which is mostly an argle-bargle string cite. But, to the extent it can be understood to mean anything at all, the court reads this provision as a perfunctory allegation that whoever did whatever in this case did so under color of state law.

[4] Among these is a notice of dishonor and opportunity to cure, doc. 1 at 29, but the historic remedy for dishonor—a duel—has been outlawed in this state since at least 1807, when it was still the Alabama Territory. *See Smith v. State*, 1 Stew. 506, 507 (Ala. 1828). Additionally, based on the rest of the complaint, it does not appear that the Watts are invoking the UCC's doctrine of dishonor of negotiable instruments. Otherwise, dishonor is not a cause of action in Alabama, nor is it a federal claim, so the complaint cannot survive on this ground.

the federal claims. As to the other things in the complaint—the flapdoodle about "UNITED STATES (INC)" being bankrupt, doc. 1 at 23, as well as boilerplate string cites about judicial immunity and judicial bias, among others—they are too disconnected to any of the facts in the case to state a claim.

## STANDARD OF REVIEW

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ruling on a motion to dismiss, all facts (but not legal conclusions) alleged in the complaint are presumed to true. *See id.* at 555.

## ANALYSIS

The five defendants filed three motions to dismiss. Regions filed its motion to dismiss, then Entrekin and Etowah County, and finally RREF. Each has alleged different grounds for dismissal, but, because "jurisdiction [must] be established as a threshold matter," *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998), the first issues that the court must consider are the grounds for dismissal that implicate the court's subject matter jurisdiction. In particular, RREF raises the

7

*Rooker-Feldman* jurisdictional bar, and Entrekin raises the Eleventh Amendment.

## I.    Claims Barred by the *Rooker-Feldman* Doctrine

28 U.S.C. § 1257 grants exclusive jurisdiction over appeals from final state court judgments to the Supreme Court of the United States. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). Accordingly, "[t]he [so-called] *Rooker–Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (citation and internal quotation marks omitted). The jurisdictional bar extends to claims first raised in state court and again in federal court and "to those inextricably intertwined with the state court's judgment." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). "A claim is inextricably intertwined if it would effectively nullify the state court judgment or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (citations and internal quotation marks omitted).

*Rooker-Feldman* is potentially applicable to the Watts' section 1983 claims against RREF, the motion for a temporary restraining order, and the section 1983 Third Amendment claim against all defendants. First up is the Watts' motion for a temporary restraining order, which the court construes as a motion for a preliminary

injunction ["MPI"]. *Cf. Haitian Refugee Center, Inc. v. Baker*, 950 F.2d 685, 686 (11th Cir. 1991) (construing "temporary restraining order" as preliminary injunction where order issued after district court heard from all parties).

The Watts appear to advance two arguments to support their temporary restraining order, and the first is that the foreclosure proceeding violated the FDCPA. This ground will be taken up later because *Rooker-Feldman* does not bar it. Second, they ask this court to void "and to set aside all orders and Judgments in the District Court of Etowah County in [the unlawful detainer actions]," as well as to restrain the enforcement of those judgments. (Doc. 9 at 3). One does not even have to reach the "Feldman" in *Rooker-Feldman* to determine that the court lacks jurisdiction to issue the injunction requested in the MPI. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–15 (1923) (holding that district court lacks jurisdiction to declare a state court judgment "null and void"). The Watts' motion must be denied as to this ground for relief.

To the extent that <u>any</u> claims against RREF (Counts I, II, and V, as well as any the court may have missed) in the complaint attack the validity of the JWP they will be dismissed without prejudice as barred by *Rooker-Feldman*. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (*Rooker-Feldman* deprives district court of subject matter jurisdiction); *Stalley v. Orlando Reg'l Healthcare Sys.*,

9

524 F.3d 1229, 1232 (11th Cir. 2008) (dismissal for want of subject matter jurisdiction is without prejudice). Additionally, Count III, against all defendants,[5] which seeks to enjoin the "hostile military takeover" of the Watts' property, is barred by *Rooker-Feldman*, because a determination that the Sheriff's forcible ejectment of the Watts from the property would be unlawful would "succeed only to the extent the state court wrongly decided the issues." *Casale*, 558 F.3d at 1260.

## II.    <u>Claims Barred by the Eleventh Amendment</u>

The Eleventh Amendment to the United States Constitution prohibits the "judicial power of the United States" from "extend[ing] to any suit in law or equity" against a state by citizens of other states, U.S. CONST. amend. XI, and against a state by her own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). In short, the Eleventh Amendment creates a "jurisdictional bar," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), against federal courts hearing actions in which non-consenting states are defendants. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67–69 (1996). A suit against a state officer in his official capacity, when damages are sought, is a suit against the state. *Edelman v. Jordan*, 415 U.S. 651, 653 (1974).

---

[5]  It may be nonsensical to imagine anyone other than Entrekin being enjoined from performing a "military" coup on the property, but the Watts' non-compliance with FED. R. CIV. P. 10(b), which requires that individual claims for relief be limited to one defendant, compels the court to do so.

An action seeking damages from an Alabama sheriff in his official capacity is barred by the Eleventh Amendment. *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990). Accordingly, to the extent that any of the claims in this case are brought against Sheriff Entrekin in his official capacity, they will be dismissed without prejudice.

### III.   The FDCPA Claim(s)

Having cleared the jurisdictional briar patch, it's on to the merits. Regions[6] moves to dismiss the FDCPA claims on the ground that they are time-barred. The statute provides that any claims to enforce the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Regions argues that the complaint's allegedly unfair debt collection practices predate or are contemporaneous with the date of foreclosure—December 20, 2013—so any FDCPA claims would have expired in December 2014.

For their part, the Watts complain in their responsive filing that defense counsel "is aware and understand the court rules but is willfully engaging in acts of fraud, deception, trickery, and even necromancy in order to deprive and defraud

---

[6] Because of the deep ambiguity of the complaint, reasonable minds could differ as to which claims the Watts assert against which defendant(s). In light of the court's decision to treat each ground for relief as being brought against each defendant, the grounds for dismissal raised by different defendants will be treated as applicable to all defendants, unless a particular ground is necessarily limited to less than all defendants, such as the Eleventh Amendment.

Plaintiff(s)." (Doc. 17 at 2). While it is true that necromancy is disfavored in the law, the Watts Boys are the only necromancers before this court; they incessantly and vexatiously attempt to raise dead claims from the grave.[7] But, they make no effort to dispute the Defendants' characterization of the allegedly wrongful acts. The FDCPA claims will be dismissed as to all defendants.

The reader will recall that the Watts proposed an alternative ground for the MPI: that "Defendant(s)' collective actions that violated several FDCPA." (Doc. 9 at 2). A preliminary injunction may issue if the moving party shows "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Since the FDCPA claims are all time-barred, there is no likelihood of success on the merits, and the Watts are not entitled to a preliminary injunction.

## IV.   **The Civil Rights Claims**

Regions moves to dismiss any civil rights claims against it on the ground that

---

[7] The court has no occasion to determine whether necromancy would <u>ever</u> not be vexatious.

12

the Watts have not plausibly alleged that it has done anything, legal or illegal, under color of law, which is a requirement to state a claim under 42 U.S.C. § 1983. *See District of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973). Regions is correct. Accordingly, all section 1983 claims against Regions will be dismissed.

Sheriff Entrekin moves to dismiss the civil rights claims against him, individually, on the ground that the complaint does not allege that he personally participated in the putative constitutional violations, and, since there is no *respondeat superior* liability under section 1983, *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), the Watts have not stated a claim against him. As to Counts I and II, the court agrees. These claims will be dismissed as to Sheriff Entrekin in his individual capacity.

Etowah County moves to dismiss the section 1983 claims against it on two grounds: the same *respondeat superior* ground as Sheriff Enrekin, and that any possible wrongdoers in the complaint (the state court judges) are not employed by Etowah County. To impose liability on a municipality, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Finding no such "policy or custom" plausibly alleged to have created the Watts' injury, Counts I and II against Etowah County will be dismissed.

As to Count V, the Watts allege that all defendants have conspired to deprive

them of their constitutional rights, and this allegation at least satisfies *Iqbal's* requirement of personal participation in a constitutional violation for liability to attach. But *Iqbal* giveth and *Iqbal* taketh away, because these defendants also moved to dismiss the complaint on the ground that the claims for relief were implausible—which they are. As interpreted by *Iqbal*, FED R. CIV. P. 8(a)(2) requires the court to take into account "obvious alternative explanation[s]" for allegedly unconstitutional conduct before allowing a complaint to clear a motion to dismiss. *Iqbal*, 556 U.S. at 682.

Here, the Watts' allegation that Regions, RREF, Sheriff Entrekin, and the Etowah County Commission conspired with a handful of state judges to deprive the Watts of their constitutional rights by trumping-up a foreclosure is absurd on its face. The logical alternative explanation is that Senior failed to pay on his note, so the property was foreclosed, the foreclosing party (RREF) exercised its legal right to have any squatters evicted, and the sheriff's office did its job by attempting to convince the squatters to leave. The Watts have pleaded no facts that plausibly suggest anything has happened to them other than run-of-the-mill litigation and judgment execution. Count V will be dismissed as to Etowah County and Sheriff Entrekin in his individual capacity.

## V.      Any Other Federal Claims

To the extent the Watts intend to raise any other federal claims, they have put

neither this court nor these defendants on notice of those claims. Therefore, those

claims were filed in violation of FED. R. CIV. P. 8–11, so the court will exercise its

power and do its duty to dismiss the claims without prejudice. *Cf. Davis v. Coca-Cola*

*Bottling Co. Consolidated*, 516 F.3d 955, 984 (11th Cir. 2008) (the court should *sua*

*sponte* strike unintelligible complaints).

## V.      The Other State Law Claims

A district court may decline to exercise supplemental jurisdiction over state law

claims if "the district court has dismissed all claims over which it has original

jurisdiction." 28 U.S.C. § 1367(c)(3). All federal claims have been dismissed in this

matter, and there is no basis for the court to exercise original jurisdiction aside from

28 U.S.C. § 1331, so any remaining state claims in this case will be dismissed without

prejudice.

### CONCLUSION

The Watts were entitled to their day in court, not every day in court. *Cf. Wilson*

*v. Retail Credit Co.*, 474 F.2d 1260, 1261 (5th Cir. 1973)[8] ("Every citizen is entitled

---

[8] This authority is controlling in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

to his day in court; however, our judicial system was not designed as an experimental laboratory to license losing parties to bring vexatious and repetitive claims based on the same transaction."). They have had their day. A separate order will issue dismissing the case.

       **DONE** this 23rd day of August, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

16